**ST. LOUIS-SAN FRANCISCO RY. CO. et al.
v. SIMMONS.**

No. 15572—Opinion Filed March 9, 1926.

Rehearing Denied April 20, 1926. .

1. **Appeal and Error—Review—Questions of Fact—Railroads—Negligence of Train's Speed at Crossing.**

In a suit for personal injury suffered when the wagon in which plaintiff was riding was struck by the railway company's train at a public crossing running at the rate of 60 miles an hour, the question as to whether the railway company and its engineer in charge of the engine were negligent in approaching the crossing at such rate of speed is a question for the jury, under proper instructions, and where there is any competent evidence reasonably tending to sustain the verdict, it will not be disturbed on appeal.

2. **Damages—Future Pain and Suffering as Element—Evidence Justifying Submission to Jury.**

In such case, where the plaintiff testified that she had continually suffered pain as the result of the injuries, and that at the time of the trial, 14 months after the accident, she was still so suffering, and the railway company's surgeon, on cross-examination, in response to a hypothetical question, fairly stating the evidence, as to whether the injuries were permanent, answered: "If she was suffering and still suffered, as you outlined, I would say that most likely it is permanent," it was not error for the trial court to submit to the jury the question of future pain and suffering.

3. **Appeal and Error—Review—Excessiveness of Recovery for Personal Injuries.**

In an action for personal injuries the verdict of the jury will not be set aside as excessive unless it clearly appears that the jury has committed some gross and palpable error or acted under some improper bias, influence, or prejudice or has totally mistaken the rules of the law by which the amount of damages is fixed. Sand Springs Railway Co. v. Westhafer, 92 Okla. 89, 218 Pac. 525.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Marshall County; Porter Newman, Judge.

Action by Mary E. Simmons against St. Louis-San Francisco Railway Company and W. A. Yoakum. Judgment for plaintiff, and defendants appeal. Affirmed.

E. T. Miller, Stuart, Sharp & Cruce, and Ben Franklin, for plaintiffs in error.

Suits & Hall and Mathers & Coakley, for defendant in error.

Opinion by RAY, C. This appeal is from a judgment of $6,000 in favor of Mary E. Simmons for personal injuries suffered when the wagon in which she was riding, driven by her husband, was struck by a passenger train at a public crossing.

The first ground upon which reversal is asked is that the verdict of the jury is not supported by sufficient evidence.

The established facts in the case are: That the railway is so constructed that a train approaching the crossing where the accident occurred could not be seen until within about one-quarter of a mile of the crossing, owing to the fact that the road at that point **curves** around timber which obstructs the view of the train from the crossing; that the crossing was a public crossing of a public highway; that as the wagon in which plaintiff was riding was crossing the railroad it was struck by the engine of a special train carrying the officials of the railway and running at 60 miles an hour. Plaintiff's evidence shows that she, her husband and two children were riding in a covered wagon loaded with their household effects; that they approached the crossing from the east, and stopped about 12 feet before they reached the tracks, and both she and her husband looked and listened to see if a train was approaching; that no train was in sight or hearing; that they then drove on the track, and about the time the front wheels of the wagon crossed the first rail, plaintiff heard the whistle and saw the train coming from the north, after it had rounded the curve about one-quarter of a mile away; that she

told her husband the train was coming, and he whipped up the horses, but before the wagon got clear of the track it was struck by the engine; that about eight feet east of the track there was a drain box which had two holes in it; that the rails of the road were about four inches higher than the surface of the road; that there was a plank about 12 inches wide placed against each side of each rail; that on the inside of the rail the planks were worn, which caused the wheels to drop after crossing the rail so that, as described by one witness, it kept the wagon rocking so it was almost impossible to get across with a load. As described by another witness, "The right front wheel hits the rail first, then the left one hits it, and causes it to go bumpety-bumpety, bump. In crossing it all the four wheels hit the rails differently", and "causes the wagon tongue to knock and jerk."

The undisputed evidence of the defendants shows that the train was running at the usual rate of speed of trains over that part of the track, and that the engineer, upon coming in sight of the crossing, used every method at his command to stop the train. On this evidence it is argued that the evidence does not justify the verdict on the ground of the excessive speed of the train. The evidence showing that the engineer was unable to stop the train, or materially reduce its speed, before it reached the crossing within the 15 seconds required to run the quarter of a mile, is not evidence tending to show that it was not negligence upon the part of the defendants to approach the crossing at such rate of speed, but tends rather to the contrary. Neither does the fact that other trains had been running over the same track at the same rate of speed furnish convincing evidence that such speed was not negligence upon the part of the defendants. Negligence on one occasion does not justify negligence on another occasion. The evidence was sufficient to justify the jury in finding that the defendants were guilty of negligence in approaching the crossing at such rate of speed.

It is next contended that the court erred in submitting the condition of the crossing where the accident occurred, as a separate cause of action, for the reason that it was not pleaded in plaintiff's petition. This question was decided adversely to this contention of the defendants in the recent case of St. Louis-San Francisco Railway Co. v. Simmons, No. 15570, 116 Okla. 126, 242 Pac. 151. The cause of action in that case arose out of the same accident as in this case, and the pleadings as to the condition of the crossing and the allegations of negli-

gence in that case are identical with the pleadings in the instant case, and no objection was made to the introduction of the evidence as to the condition of the crossing, and the defendant offered controverting evidence the same as in that case. It was there held that the question was waived.

It is contended that the court erred in giving the following instruction to the jury:

"You are further instructed that if you find from a fair preponderance of the evidence that the defendants failed to ring a bell or blow a whistle one-quarter of a mile from said crossing. and you further find that such failure to ring the bell or blow the whistle was the direct and proximate cause of the injury to plaintiff, if any she received, and you further find that neither the plaintiff nor her husband, who was driving the wagon in which plaintiff was riding at the time of receiving her alleged injuries, were guilty of any acts of negligence which aided or helped to contribute to her injuries, then you should find for the plaintiff. Excepted to by defendants. Exceptions allowed. P. Newman, Judge."

The objection to this instruction is that it placed a duty upon the defendants not required by law in this, that under the statute, section 5531, Comp. Stat. 1921, the railroad company is given some discretion as to the point at which signals may be sounded, and that there is no law compelling the railroad company to sound the whistle or ring the bell at a point just 80 rods from a crossing. Unquestionably, this instruction was technically incorrect, but it is not apparent that the jury could have been misled by it. The testimony of the plaintiff, and also of the engineer and fireman, who were operating the train, was that the whistle was sounded at or about a point one-quarter mile from the crossing. There was no serious conflict of testimony upon that question.

It is next contended that the court erred in submitting to the jury the question of future pain and suffering. The only direct evidence as to pain and suffering was the testimony of the plaintiff. Her testimony was that prior to the injury she was strong, in good health, did her housework, and helped her husband in the field; that since that time she had been unable to do any work; that she had continued to suffer pain in her sides and chest from the time of the injury to the time of the trial, 14 months later, and that she was suffering at the time of the trial. The contention of the railway company is that the injury being subjective, the jury could not say, in the absence of expert testimony, that there would be future pain and suffering. The only other

testimony as to future pain and suffering, or the permanency of the injuries, was that of Dr. Neathery, the company surgeon and a witness for the defendants, who had seen and examined the plaintiff two or three times immediately following the accident. On cross-examination, in answer to a hypothetical question which fairly stated the evidence, he answered:

"If she was suffering and still suffered, as you outlined. I would say that most likely it is permanent."

The cases relied upon by the railroad company are Shawnee-Tecumseh Traction Co. v. Griggs, 50 Okla. 566, 151 Pac. 230; Oklahoma Hospital v. Brown, 87 Okla. 46, 208 Pac. 785; Hines v. Dean, 96 Okla. 107, 220 Pac. 860. In the Shawnee-Tecumseh Traction Company Case, where the authorities generally were reviewed, it was held:

"There are two rules by which future pain and suffering may be submitted to the jury: (1) If the injury is objective, and it is plainly apparent. from the nature of the injury, that the injured person must of necessity undergo pain and suffering in the future, the jury may infer that fact from proof of such an injury alone. (2) But where the injury is subjective, then, to warrant a jury to return a verdict for future pain and suffering, there must be produced evidence by expert witnesses that the plaintiff, with reasonable certainty, will experience future pain and suffering as a result of the injury."

In that case the only testimony as to the permanency of the injury or future pain and suffering, in addition to that of plaintiff, was the physician's answer to a hypothetical question in which he said:

"I do not know whether they are permanent or not. My medicines have not cured them it seems."

It was there held error to submit to the jury the question of future pain and suffering.

In Hines, Director General, v. Dean, supra, it was held that the injury was objective, and that the injuries sustained were of such character that it would not require skilled and professional men to determine whether the injuries were permanent, and was not error to submit the question of the permanency of the injury to the jury in the absence of expert evidence, but it was also held that the injury was not such that the jury could say, with reasonable certainty, whether there would be future pain and suffering, and that. in the absence of expert evidence, the court erred in submitting to the jury the question of future pain and suffering. In that case the injury was to the plaintiff's knee. Her knee had never been straight since the accident, and could not be straightened, as could be observed.

These cases appear to establish the rule, that where the injury is such that the jury can say from the common experience of mankind that future pain and suffering will probably result from the injury, expert testimony is not necessary, but where the nature of the injury is such that the average man cannot with reasonable certainty know whether future pain and suffering will result from the injury, expert testimony is necessary. The rule rests upon the ground that in such cases, nonexperts are not competent witnesses for the reason that experts only can know whether future pain and suffering will probably result from the injury. In the instant case, however, the plaintiff was a competent witness to testify as to the pain and suffering she had endured for the 14 months intervening between the injury and the trial, and that she was then suffering pain. She so testified. The railway company's surgeon, who had examined her at the time of the accident, having testified, in response to a hypothetical question which fairly stated the evidence, that the injury was probably permanent, the fair, logical and only inference to be drawn from the evidence is that pain and suffering would continue in the future. We think on this evidence the court properly submitted to the jury the question of future pain and suffering.

It is finally contended that the verdict for $6,000 is excessive. The rule of this court is as stated in the seventh paragraph of the syllabus in Sand Springs Ry. Co. v. Westhafer, 92 Okla. 89, 218 Pac. 525:

"In an action for personal injury the jury is charged with the duty to fix the amount of damages, and its verdict will not be set aside for excessive damages unless it clearly appears that the jury committed some gross and palpable error, or acted under some improper bias, influence, or prejudice, or has totally mistaken the rules of law by which the amount of damage is fixed."

The evidence is conclusive that the plaintiff received personal injuries when the wagon, in which she was riding across the railway company's track on a public crossing, was struck and destroyed by the railway company's engine and train in charge of its engineer. There was competent evidence reasonably tending to show that the collision was caused by the negligence of the defendant in running the train at an excessive rate of speed in approaching a dangerous crossing, without any fault on the part of

the plaintiff; that a rib was fractured, and that she suffered other injuries to her side and chest and curvature of the spine resulted; that prior to the injury she was physically sound and was able to do her household work and work in the field, and that after the injury she had been unable to work and had suffered pains in her side and chest and was so suffering at the time of trial; that the injuries were probably permanent. The issues were fairly submitted to the jury, and it is not made to appear that the jury were influenced by bias or prejudice, or were in any way mistaken in the rules of law as to the proper measure of damages.

The judgment is affirmed.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. p. 853 §2834; 33 Cyc. p. 1108. (2) 17 C. J. p. 1057 §361; 8 R. C. L. p. 544; 2 R. C. L. Supp. p. 626; 4 R. C. L. Supp. p. 561; 5 R. C. L. Supp. p. 475. (3) 4 C. J. p. 871 §2874; anno. L. R. A. 1915F, 30; 8 R. C. L. p. 764; 2 R. C. L. Supp. 638; 4 R. C. L. Supp. p. 567; 5 R. C. L. Supp. p. 480.