## SAFEWAY CAB SERVICE CO. v. MINOR.

No. 27116. June 8, 1937.

Rehearing Denied July 13, 1937.

George F. Short and Welcome D. Pierson, for plaintiff in error.

Twyford & Smith and William J. Crowe, for defendant in error.

BAYLESS, V. C. J. Mrs. F. E. Minor recovered a judgment in the district court of Oklahoma county against Safeway Cab Service Company, and the company appeals.

The plaintiff's cause of action is for

damages for personal injuries sustained as the result of being struck by one of the defendant's cabs. The plaintiff was her only witness as to the accident, and the cab driver was the defendant's only witness thereto. The plaintiff alighted from her car, which was headed south and on the west side of the street, and proceeded east and in front of defendant's cab, which she saw parked by the curb on the east side of the street headed north. This was about the middle of the block. She says the cab was stopped, but started up suddenly when she stepped in front of it, and knocked her down. She saw and observed the cab at all times. The driver testified he had stopped the cab and had unloaded his passengers, and had the engine in low gear, and had barely put the cab in motion when he observed plaintiff running in front of his cab. He testified, further, that he stopped his cab before striking her, and that she became confused and alarmed and fell to the pavement.

One of the contentions of defendant is that there was no evidence of primary negligence on its part, taking into consideration the plaintiff's testimony in its most favorable light. This is indeed a close question. In many respects it is similar to the case of White Line, etc., Co. v. Waterman, 150 Okla. 277, 3 P. (2d) 839, cited and relied upon by defendant. After a careful comparison of that case with the one before us, we are of the opinion there is one controlling difference. In that case the injured party stepped in front of a moving vehicle at a point where pedestrians were forbidden to cross streets. In this case, taking plaintiff's testimony to be true, as we must in the face of a demurrer, she stepped in front of a standing vehicle, although it was at a point where she was forbidden to cross the street. The question whether the driver of the defendant's cab was negligent under these circumstances is one of sufficient doubt to prevent the court from determining the matter, but on the contrary to require its submission to the jury.

Another contention of the defendant concerns the questions asked prospective jurors by attorney for plaintiff about their connection with public liability companies. Specifically, the question asked is very similar to the one approved by us in Beasley v. Bond, 173 Okla. 355, 48 P. (2d) 299, provided it was asked in good faith. Defendant contends the plaintiff's attorney was not in good faith in asking the question, and cites statements made by said attorney concerning his intentions. These statements evinced an intention to ask such questions of every juror called, and it appears they were so asked. We are doubtful of the propriety of this attitude on the part of plaintiff's attorney.

This is becoming one of the most perplexing problems this court is called upon to consider. It is not necessary for us to repeat herein what we said in Beasley v. Bond, supra. The cases from the courts of the various states in the Union show how they have met the situation. The plaintiff has the right to elicit information concerning the business connections of prospective jurors. Yet we have said, and still recognize, that a jury is likely to be swayed in finding against defendant and in fixing the amount of the recovery by knowledge that the defendant is indemnified. Our problem is to say how far the plaintiff may go in eliciting information in good faith, and when the effect of such questioning is to convey expressly or by inference to the jury information that the defendant is indemnified, which is bad faith. However, since much of the determination of the propriety of such questions is left to the trial judge, and we seldom if ever have more than the printed record before us, the matter of determining good or bad faith is intensified.

We cannot lay down a hard and fast pattern for the attorneys to follow, but can only outline what we think is proper procedure and leave the application of the rule or its analogous aspects to the fair discretion of the trial judges. There certainly are methods of approaching the issue in a fair manner and in keeping with the rule of law we have announced, as opposed to an arbitrary and indiscriminate question of prospective jurors irrespective of the needs of the occasion.

The attorneys should ask preliminary questions which might eliminate further questions. For instance, if a juror is asked if he owns stock in any corporation or is employed by one, and answers in the negative, further questions are unnecessary. If the juror answers in the affirmative, inquiry as to the type of corporation is proper. If the answer discloses that it is a corporation other than one engaged in insurance business, further questions are unnecessary. If the answer discloses that it is an insurance corporation, then pertinent and specific questions are proper in order to establish the prospective jurors' partiality, etc. By this method of approach the information may be elicited without laying stress upon one particular type of company. The questions proper in the course of the examina-

tion then will develop the one type or the particular company. This method used under proper supervision by the trial court will eliminate much of the difficulty of this problem.

Reversal is also sought because of the giving of certain instructions.

Instruction No. 18, submitted to the jury, read:

"You are further instructed that it is further provided by the ordinance of the city of Oklahoma City as follows:

" 'Pedestrians shall cross highways within the business loop at sidewalks extending only, provided that persons alighting from railway cars shall proceed to the nearest curb.'

"To cross a street at a place not designated by the ordinances is a violation of the same and would be negligence on the part of the one so crossing the street ordinarily, but in this case if you find that the plaintiff had crossed the street and was at or near the curb while the defendant's cab was standing at the curb on the east side of Hudson street and he saw or could have seen the plaintiff there by the use of ordinary care and diligence and then started his cab at that time and struck the plaintiff, it would make no difference whether or not the plaintiff violated the law in crossing the street."

The evidence of the plaintiff is that the car started up after she stepped in front of it. The evidence of the driver is that just as he started up—just the instant he put the car in motion—the plaintiff ran in front of the car. The jury had the duty of determining which was true—that is, whether plaintiff was in front of the car, and the driver started it and struck her, when he would have seen her there had he been looking ahead; or whether her approach from the side was co-incidental with the starting of the car and sudden, and whether the driver was guilty of negligence thereafter under the last clear chance doctrine. The law is that a driver of a vehicle, under such circumstances, is not bound to anticipate the approach of pedestrians at such point in the street. Owens v. Tisdale (La. App.) 153 So. 564, Instruction No. 19 is a proper statement of the duty the driver owed to the public. To us the part of instruction No. 18, which required the driver to use ordinary care and diligence to see plaintiff when the jury had not yet determined when and where he saw her first, places a greater burden on the driver than the law requires and conflicts with No. 17. The evidence had to be submitted to the jury, but it was not proper to place the defendant under any

greater burden than the law sets up. In several cases such an instruction has been condemned. Graybill v. Claucy, 144 Okla. 237, 291 P. 87; St. L. & S. F. R. Co. v. Clark, 42 Okla. 638, 142 P. 396; St. L. & S. F. R. Co. v. Krall, 31 Okla. 624, 122 P. 177, and others.

We now consider instruction No. 16. The plaintiff alleged three specific acts of negligence: (1) Running up against the curb when the driver had a plain view of plaintiff; (2) approaching the entrance of the building without sounding the horn or retarding the speed of the vehicle; and (3) driving said cab against the plaintiff in violation of her rights and in disregard of the obligations inherent in the situation. The court instructed that she could recover upon the showing of any one of them. We do not understand the first ground. The cab was parallel to the curb, and we cannot conceive of any negligence inhering in the nearness of approach under such circumstances, so long as it did not run upon the walk or squeeze plaintiff between the vehicle and the curb. It was not alleged or shown that the cab was forbidden to be where it was, and, in addition, it was there when plaintiff first saw and approached it. Further, whatever plaintiff's allegations of negligence are, the acts of the driver in approaching the entrance to the building were no part of the act by which plaintiff was injured. The driver had approached said entrance and had stopped his car, and it was standing still when plaintiff approached it, and remained so until she was near it, if not in front of it. The driver of the cab, under these circumstances, did not owe the plaintiff any duty in respect of his approach to the entrance to the building. Neither of these two allegations was supported by any evidence, and should not have been submitted to the jury.

Defendant complains of the giving of instruction No. 17, on the law of last clear chance. It is not the form of the instruction that is objected to, but the necessity for giving it. This contention is closely allied to the contention that there was no proof of primary negligence. We are of the opinion that there was evidence of contributory negligence on the part of the plaintiff, and the defendant so asserts, but this is always a jury question in Oklahoma by virtue of our Constitution, sec. 6, art. 23. The question of primary negligence in this case is doubtful, but, as we have pointed out, was for the jury. Under the circumstances, we feel that an instruction on the

law of last clear chance was favorable to plaintiff.

Defendant next complains of the admission of evidence of disturbance of the menstrual functions of the plaintiff, where such an injury is not specifically pleaded. The allegation of the amended petition is:

"Plaintiff further alleges that as a direct and proximate result of the acts of the defendant as hereinabove set out that her shoulder 'and back were badly bruised and affected, and the skin, flesh, and muscles lacerated and bruised; and her body otherwise bruised and injured, and that she suffered great and excruciating pain and was confined to her bed after said accident, during 'all of which time she suffered great physical pain and mental anguish, and will continue to so suffer."

Each party cites cases in support of their respective contentions hereon. We are of the opinion that under our liberal system of pleading and procedure, in view of plaintiff's sex and the nature of the accident, the admission of such evidence under this petition was not erroneous.

We have criticized this record in several respects, but it is our duty to affirm the judgment unless we are of the opinion that the matters pointed out resulted prejudicially to defendant. In other words, we must say that but for these the verdict would have been otherwise. This we cannot do. The verdict of the jury in amount was moderate. We cannot convince ourselves that a new trial would result in a different finding or a smaller verdict. Morris v. White, 177 Okla. 489, 60 P. (2d) 1031.

Judgment affirmed.

OSBORN, C. J., and RILEY, BUSBY, WELCH, PHELPS, CORN, and GIBSON, JJ., concur. HURST, J., concurs in conclusion.